IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Stony Glenn Allison, #263717              )
                                          )          Civil Action No.8:08-2415-HMH-BHH
                        Petitioner,       )
                                          )
            v.                            )          **REPORT AND RECOMMENDATION**
                                          )            **OF MAGISTRATE JUDGE**
McKither Bodison, Warden                  )
of Lieber Correctional                    )
Institution,                             )
                                          )
                        Respondent.       )
_____ )

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254.  This matter is before the Court on the respondent's motion for summary

judgment.  (Dkt. # 17.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on July 1, 2008.[1]  On November 10, 2008,

the respondent moved for summary judgment.  By order filed November 12, 2008, pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

adequately respond to the motion.  On January 16, 2009, the petitioner filed a response

opposing the respondent's summary judgment motion.

**PROCEDURAL HISTORY**

---

[1]This filing date reflects that the envelope containing the petition was date stamped as having been received on July 1, 2008, at the Lieber Correctional Institution mailroom. (Pet. Attach. # 3.)  *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

The petitioner is currently incarcerated in the Lieber Correctional Institution.  In January 1999, the petitioner was indicted for murder, first degree arson, and second degree arson.  Andrew Johnston represented him at trial.  On January 17-19, 2000, the petitioner was tried before a jury with the Honorable Wyatt T. Saunders, Jr., presiding.  The jury convicted the petitioner as charged and Judge Saunders sentenced him to forty years for the murder, ten years for the first degree arson, and fifteen years for the second degree arson, to run concurrently. The petitioner filed a timely appeal.

Senior Assistant Appellate Defender Wanda H. Haile represented him on appeal. On March 16, 2001, the petitioner filed a brief raising the following issue for review: "The lower court erred in allowing particular prior bad acts attributed to appellant into evidence at trial." On January 16, 2002, the South Carolina Court of Appeals affirmed the petitioner's conviction in an unpublished opinion, *State v. Allison,* Op. No. 2002-UP-028 (S.C. Ct.App. filed Jan. 16, 2002).  (Supp. App.  614 - 617-A.)  The remittitur was sent down on February 1, 2002. (Supp. App. 613.)

On October 17, 2002, the petitioner filed a pro se post-conviction relief ("PCR") application, raising the following grounds for relief:

> 1. Ineffective assistance of counsel due to Rule 5 and Brady violations, as well as unconstitutional jury instructions;
>
> 2. Brady violation.

(Supp. App. 618-36.)   On December 15, 2004, a hearing was held before the Honorable Roger L. Couch.  The petitioner was present at the hearing and represented by attorneys Thomas A. M. Bogs and Gracie Knie.  On November 22, 2005, Judge Couch filed an order denying the petitioner relief and dismissing the application with prejudice.  On December 2, 2005, the petitioner filed a Rule 52(b), SRCP, motion.  (App. 735-740.)   In his motion, the petitioner asked the PCR judge to amend his order and address the petitioner's pro se

2

documents entitled "Default" and "Writ of Mandamus."   In these documents, the petitioner alleged that the respondent was in default for failing to timely respond to his application for PCR.  The respondent interpreted the motion as a Motion to Alter of Amend Judgment pursuant to Rule 59(e), SCRCP.  On December 19, 2005, Judge Couch denied the motion. The petitioner timely served and filed a notice of appeal.

On March 2, 2007, the petitioner filed a petition for writ of certiorari raising the following issues, quoted verbatim:

> 1. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's appellate counsel was ineffective for failing to raise on appeal the trial court's denial of Petitioner's motion to suppress the confession/s obtained in violation of Miranda?
>
> 2. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's appellate counsel was ineffective for failing to raise on appeal that the trial Prosecution violated Rule 5 and Brady by withholding the identity of [a] witness as to motive until the first day of trial?
>
> 3. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective because they did not address in his trial and appeal the failure of trial counsel to make a motion for directed verdict as to the charge of murder at the close of the state's case?
>
> 4. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's appellate counsel failed to request a rehearing?
>
> 5. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective for failing to address the outburst of witness, Randy Glenn Allen?
>
> 6. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective for failing to request a curative instruction to the jury and to raise on appeal the trial court's reasonable doubt instruction to the jury?

7. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective for failing to object to and to raise on appeal, the prosecutor's inappropriate remarks in his closing argument which attempted to arouse passion and prejudice?

8. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective for failing to request at trial and to raise on appeal, an additional jury charge on criminal intent because said charge was omitted by the Court?

9. Did the PCR Court err in denying Petitioner's request for Post-Conviction Relief which was based on the grounds that Petitioner's trial and appellate counsel were ineffective for failing to request an additional corrective jury charge as to the confusing murder charge and involuntary manslaughter charge of The Court?

(Pet. for Writ of Certiorari at 2.)    On May 7, 2008, the South Carolina Supreme Court denied the petitioner a writ of certiorari.  The remittitur was sent down on May 23, 2008.

In this habeas action, the petitioner raises the following grounds for relief, quoted verbatim:

**GROUND ONE:** Petitioner was denied his constitutional right to a fair trial when the trial court allowed prior bad acts in.
**SUPPORTING FACTS:** The court allowed a prior argument between the petitioner and his wife  to be introduced to infer motive when in fact the argument had no relevance to the issue at hand. The prejudice impact clearly outweighed the probative value.  Thus in allowing the prior bad acts in denied petitioner a fair trial Clearly this was contrary to well established federal law.

**GROUND TWO:**   Ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

**SUPPORTING FACTS:**

**ISSUE (A)**: Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal the trial court's denial of petitioner's motion to suppress the confessions obtained in violation of Miranda.

4

**ISSUE (B):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel when appellate counsel failed to raise on appeal that the prosecution violated Rule 5 and Brady by withholding the identity of witness as to motive until the first day of trial.

**ISSUE (C):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of trial and appellate counsel when they did not address at trial or on appeal the failure of trial counsel to make a motion for a directed verdict on the murder charge.

**ISSUE (D):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel when appellate counsel failed to file for rehearing from direct appeal.

**ISSUE (E):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of trial counsel and appellate counsel when both counsel's failed to raise and address the issue of the outburst of witness, Randy Glenn Allen and in failing to do so petitioner  was denied his fourteenth amendment right to a fait trial.

**ISSUE (F):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel when appellate counsel for failing to address trial counsel's failure to request a curative instruction on the trial court's reasonable doubt instructions to the jury.

**ISSUE (G):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel and trial counsel for failing to address the prosecutor's improper closing that denied petitioner his fourteenth amendment right to a fair trial.

**ISSUE (H):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of trial counsel and appellate counsel when counsel failed to request  at trial and raise on appeal an additional jury instruction on criminal intent because said charge was omitted by the court.

**ISSUE (I):**    Petitioner was denied his constitutionally guaranteed right to the effective assistance of trial counsel and appellate counsel when trial counsel failed to request an additional jury instruction as to the confusing murder instruction and involuntary manslaughter charge, and appellate counsel was ineffective for addressing trial counsel's failure to preserve this issue.

5

**ISSUE (J):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of counsel when counsel failed to object to the unconstitutional sentence that was handed down by the court that was contrary to legislative intent.

**ISSUE (K):** Petitioner was denied his constitutionally guaranteed right to the effective assistance of PCR appellate counsel, when PCR appellate counsel failed to address the issue of petitioner's unconstitutional sentence on PCR appeal.

(Pet. & Attach. # 2.)

## STATEMENT OF FACTS

On December 5, 1998, Ruby Allison was found dead in her burned trailer on property she owned in Campobello, South Carolina. Ruby's son, Edward Allison, and his wife also lived on a trailer on this property and their trailer had also been set on fire. (App. 292-93.) The petitioner, Ruby's grandson, and his wife, Tamara, lived in another trailer on the same property which was unharmed.

Ruby's neighbor, Jan Culbreth, had been awakened by his wife sometime before daylight because Ruby's trailer was on fire. While Mrs. Culbreth dialed 911, Mr. Culbreth got into his truck and drove to Ruby's trailer. Unfortunately, he was not in time to do anything for Ruby. (App. 296-98; 362-67.) He then went to the petitioner's residence and beat on his walls in an effort to alert the petitioner, but no one answered. Mr. Culbreth ran to Edward's house and started beating on his door. When he ran around back, he saw that Edward's trailer was also on fire. He then was able to waken Edward, and Edward got his family out of the trailer. Mr. Culbreth put out the fire at Edward's trailer with a hose. (App. 296-98; 362-67.) Neither Edward nor Mr. Culbreth saw the petitioner while the fire was still burning at Ruby's residence. (App. 301; 367.)

On December 3, 1998, Edward had taken his mother to the bank and she had cashed a check for $500.00. She used part of the money to buy groceries and then Edward

6

took her home.  (App. 403-05)  Edward last spoke to his mother on the phone around 9:45 p.m. on December 4th.  (App. 295.)

At trial, the petitioner's wife, Tamara, testified as follows.  She stated that she and the petitioner went out on December 4th, a Friday night.  They arrived home shortly after 12:00 a.m. and they had an argument when they got home because the petitioner wanted to go to another bar with a friend, and Tamara did not want him to go because she had to be at work early Saturday morning.  This argument continued for ten to fifteen minutes.  The petitioner tricked Tamara into believing that he did not have keys to the truck, and he left when she went inside to look for the keys. Tamara immediately went to Ruby Allison's trailer and told her about her fight with the petitioner.  Tamara testified that Ruby did "like anybody, Edward, Glenn, or Stoney, or any of them to drink and she gets on them every time that she knows that they drink." (App. 311-16.)   After explaining the situation to Ruby, Tamara called the petitioner's mother, Judy Allison, and asked Judy to take her to get her truck because she had to work the next morning. Then, she called the River Bend Tavern and spoke with the bartender, Wilene who told her that the petitioner was at another bar known as "G-Jay's, in Inman.  (App. pp. 316)-20.

Judy took Tamara to G-Jay's and Tamara got the truck and went back to Judy's residence.  However, both women realized that the petitioner might be mad if he did not have a ride home.  Tamara went back to G-Jay's to tell the petitioner that she had the truck. (App. 316-20.) Tamara saw the petitioner dancing with another woman and she confronted the girl and told the girl that the petitioner was married.  She also told the petitioner that she was taking the truck and he would need to find  a ride home.  The petitioner followed her outside as she was leaving and "was fussing with me."  She testified that he pulled out his pocket knife and "threatened to slash my tires . . . ." However, Tamara pushed him away as he went to cut the tires, and he made "a cat scratch" on her side with his knife.  (App.

7

322-26; 352-54.)  Tamara then got into the truck and went back to Judy's residence.  The petitioner later telephoned Judy and asked her to give him a ride home. Tamara and her son stayed at Judy's because Tamara did not want to argue with the petitioner over his drinking. At approximately 3:00 a.m., she testified that Judy took Tamara's son with her and went to pick up the petitioner. (App. 322-26.)

Judy testified that she and the petitioner stopped for food, which the petitioner ate on the way home.  (App. 353- 354.)  Judy stated that she left the petitioner at his residence around 4:00 a.m.    (App. 355.)  She stated that the petitioner "was drunk and he was messed up."  (App. 356.)  The petitioner told her that he had been taking "some kind of pills . . . ." (*Id.*)

Tamara testified that she learned about the fire some time between 7:00 and 8:00 a.m., and that she went to Ruby's trailer. She testified that the petitioner came out after she had been there for approximately 15 minutes or so.  (App.  326-30.)

Randy Allen, the petitioner's cousin, testified that he was eating breakfast at a local restaurant when his sister and brother-in-law told him about the fire.  He testified that he immediately went to Ruby's residence, but the petitioner was not present.  He testified that he and the petitioner's father, Glenn,  went to the petitioner's trailer. The door was open and they went inside.  They found the petitioner sleeping on the bed fully clothed.  (App. 163; 421-23.)  After hollering and shaking him, they eventually awakened him. Randy asked Petitioner, "Stoney, do you know your Grandma's trailer is on fire[?] And he said, it is[?] That's all he said."  According to Randy, there "was so much commotion going on I mean it would wake the dead. I mean I don't know how . . . anybody could sleep through this." The petitioner eventually came out of his trailer between 10:00 and 11:00 a.m.   and "walked straight over . . . to his wife and said go get me a twelve-pack of beer."  (App. 163; 421-23.)

Two of the petitioner's family members testified that the petitioner did not attend his grandmother's funeral. (App.. 301; 316; 424-25. )

James Bobo, the assistant chief of the New Prospect Voluntary Fire Department, testified that he was dispatched to the scene at approximately 6:15 a.m. Approximately two-thirds of the trailer had burned before firemen arrived. He alerted the Spartanburg County Sheriff's Department because of the suspicious nature of the two fires. He also was able to determine that the fire in Ruby's trailer originated in her bedroom. (App. 368-73.)

Detective Louis Burns, an arson investigator with the Spartanburg County Sheriff's Department, also arrived at the scene before 7:00 a.m. on December 5th and discovered Ruby's badly burned body in what had been her bedroom. Detective Burns confirmed that the fire in her residence began in the bedroom and opined that it would have been slow to develop into an uncontrollable fire. There was no evidence that an accelerant had been used to ignite the fire. (App. 373-80; 382-84.)   The State presented evidence that Ruby usually locked her doors at night and that she would occasionally smoke, but she never smoked in bed. (App. 163-65; 307-08.)

When Detective Burns inspected Edward's trailer, he determined that a fire had been started on the back side of the trailer next to the woods, apparently using readily available materials such as wood and paper. Also, an effort had been made to start a fire in another location at Edward's trailer, and there was a pile of debris remaining at that spot.

Investigators found a Doral tin containing both struck and unstruck matches as well as a few sprigs of pine needles in it near a "scrap pile" close to Edward's trailer. This tin belonged to the petitioner and had his fingerprint on it. Investigators also found a pair of gloves and a container with burned paper in it along a path between Ruby's residence and Edward's residence. (App. 246-47; 266; 271-75; 430-31.)

9

The petitioner made three statements to law enforcement. He made the first statement two days after the fire, on December 7th. He denied knowing anything about the crime in this statement and claimed that he and his wife went to bed between 11:00 and 11:30 p.m. on December 4th. He claimed that he last saw his grandmother around 8:00 a.m. on December 4th while he was taking care of his chickens. His grandmother brought him a cup of coffee, and they began talking. He stated: "[s]he didn't seem right and acted like something was wrong. I asked what was wrong, and she said she was worried about Bobby, my brother, who is in prison. She told me she was worried about him and just couldn't take it any more." (See State's Exhibit 1;12 App. 165-70; 209-10; 250-56.)

Law enforcement then learned that the petitioner had made a call from the victim's residence at 4:42 a.m. on December 5th to Ronnie Cash, a co-worker. This was reflected on Cash's caller identification. Cash also testified that the petitioner told him he was calling from Ruby's residence. During this five or ten minute conversation, Cash could tell that the petitioner "had a few beers in him." (App. 256-57; 357-61.)

On December 9th, the petitioner was arrested. The petitioner gave a second statement after he had been arrested and had been read his *Miranda* rights. The petitioner told Detective Steve Denton "that his grandmother had wanted to die, that she was in a better place, and I believe he said Heaven." He also told Detective Denton that he had set a phone book on fire from the stove and had thrown it into his grandmother's bedroom, which started the fire. However, he did not mention the second fire. (App. 211-14.)

In a third statement, the petitioner again mentioned having a conversation with his grandmother on the morning of December 4th. He again indicated that she was "down and [she] said she was tired of living." According to the petitioner's third statement, Ruby was tired of problems with she had with Edward's wife, and with the petitioner's brother being

10

in prison. She also missed her husband, who had died about two and a half years before.

. . ."   He went on to state:

> I got off work about 3:00 p.m. I went back by the Mini-Mart and picked Tamara up, and we went home.
>
> Me and Tamara got into an argument later. She started accusing me of seeing another woman. I just left and took the truck and went to the Little Cricket at Hwy. 11 and I-26. I bought a six pack of beer. I rode around for a while and then went to the bars.
>
> I went to Rookie's on Hwy. 176 in Landrum and then to the Long branch below Landrum. I was drinking Jack Daniels and Coke. I eventually wound up at G-Jay's in Inman.
>
> While I was at G-Jay's, Tamara showed up with my mom and got the truck. We fussed a little, but she left to go back to my mom's.
>
> I stayed there about 3-4 hours before I called my mom to get me. While at G-Jay's, I took some long white pills with squares in them and did about 3 or 4 bumps of cocaine.
>
> After mom got me, she took me back to the house. It had to be [between 3:00 a.m. and 4:00 a.m.] when I got home. I stayed at my house for about 15-20 minutes. I decided to go out to Grandma's to use the phone to call someone but I can't remember who it was.
>
> I went to her back door and it was unlocked. I went in and used the phone and called someone. I didn't see Grandma at all. After I got off the phone, I lighted a cigarette of the electric burner of the stove.
>
> I tried to make another call but didn't get through.
>
> The phone book was close to the stove and it started to catch on fire. I took the phone book to the back door. I slung the phone book towards the bathroom and rear bedroom. I didn't try to go get it or anything. I just went out the backdoor.

(App. 263-265.)

With respect to the fire at Edward's house, the petitioner stated that he went out to the building where he kept his chickens, and got some matches that he kept in a tin "Doral" box. He walked up to his Uncle Edward's house, lit some newspaper, and pushed it under

11

the trailer.  Then, he walked back to his house and passed out on his couch. He claimed he remembered waking up to what sounded like a gunshot, but went back to sleep.  The petitioner claimed the next thing he remembered was when he was awakened by his father and Sandra Campbell, who told him that his grandmother's trailer had burned. The petitioner said that he had not told anyone what he had done, and "I wished I was in my right mind when this happened. I am sorry that this happened."  (App. 265.)

Finally, Wilene Dotson testified that the petitioner was upset when he came into her bar the next day, and that they had a conversation about whether or not she thought someone would catch the person who killed his grandmother. While he was there, he laid either $300 or $400 on the bar.  She testified that this was unusual because he seldom had much money on him.  Instead, he would normally buy one or two drinks, and his father would buy the rest of his drinks.  (App. 412-15.)

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that

12

a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

13

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or

14

> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial

16

as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an

external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*     Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

### Procedurally Barred Claims

The respondent contends that several of the issues raised by the petitioner are procedurally barred. The undersigned agrees.

In Ground One, the petitioner alleges that the trial judge denied him a fair trial violating his due process rights by allowing the State to introduce evidence of prior bad acts. The petitioner contends that the respondent in his memorandum supporting summary judgment concedes that the claims in Ground One are exhausted, but then the respondent argues that the petitioner did not object before the trial court and did not argue this issue in his final brief on appeal. The petitioner contends he did object and raise the issue on appeal. (Pet'r's Mem. Opp. Summ. J. Mot. at 17.) The respondent actually contends that the petitioner did not argue at trial that the introduction of the prior bad acts evidence violated his due process rights and thus any due process argument was foreclosed from appellate review. The record shows that at trial this issue was raised and ruled upon by the trial court as one involving a state evidentiary ruling and not a federal constitutional issue. (App.308-310). Further, the undersigned notes that although "due process" is mentioned in the petitioner's appellate brief, it is only referenced once in the last paragraph of the

18

petitioner's appellate brief.  The petitioner's due process argument was not fairly encompassed within the question presented nor the argument set forth in the brief. Further, the South Carolina Court of Appeals' opinion does not address or even mention "due process."  (App. 614-617.)

Thus, the issue presented to and ruled upon by the trial and appellate courts was based on a state evidentiary ruling.  (App. 592-599).  Since the petitioner did not raise a constitutional issue and the courts did not rule on a constitutional issue pertaining to this claim in state court, he is now procedurally barred from raising this issue on federal habeas review.  *See Duncan v. Henry,* 513 U.S. 364 (1995) (reversing a grant of a writ of habeas corpus where a petitioner in his direct appeal claimed only that the ruling violated state evidentiary rules and not a federal constitutional right);  *Joseph v. Angelone*, 184 F.3d 320, 328 (4th Cir.1999)("In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court. . . .  That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.") (internal quotations and citations omitted). Accordingly, the undersigned finds that the claim raised in Ground One is procedurally barred.

In Ground Two, the petitioner alleges his trial and appellate counsel were ineffective. The plaintiff sets forth eleven allegations (Issues A-K) supporting this ground. Reviewing the claims raised in Ground  Two, the undersigned concludes that all but two claims of ineffective assistance of appellate counsel are procedurally barred.

The PCR judge ruled on only three issues relating to ineffective assistance of appellate counsel and the petitioner did not file a Rule 59 motion and request a ruling on any additional claims of ineffective assistance of appellate counsel.  *Al-Shabazz v. State,*

19

527 S.E.2d 742, 747 (S.C. 2000)(holding "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order.") [2]

The PCR judge ruled on whether appellate counsel was ineffective: 1) for failing to raise on appeal the trial court's denial of a motion for a continuance based on a *Brady* violation; 2) for failing to raise on appeal the trial court's denial of the petitioner's motion to suppress the statements which the petitioner made after his arrest; and 3) for failing to file a petition for rehearing. (App. 729-732.) Because the PCR judge did not address any other issues relating to the effectiveness of appellate counsel in his order of dismissal, the South Carolina Supreme Court would not have been able to review additional issues of ineffective assistance of appellate counsel. *McCullough v. State,* 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State*, 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review).

Accordingly, the petitioner's claims of ineffective assistance of appellate counsel in Issues B , C, D, E, F, G, H, J  in Ground Two are barred from habeas review. *Coleman v. Thompson,* 501 U.S. 722 (1991).[3]

When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S.

---

[2]Although the petitioner did file a Rule 52(b), SCRCP, he did not raise these issues in that  motion.  As noted above, in his Rule 52 motion, the petitioner asked the PCR to rule on his motion for default and his petition for a writ of mandamus in which the only issue raised by the petitioner was the respondent's alleged failure to timely file an answer to the petitioner's PCR application.

[3]The petitioner raises additional claims of ineffective assistance of trial counsel in Issues C, D, E, F, G, H, and I in Ground Two, which are not procedurally barred.

at 750. The petitioner has not set forth any argument alleging cause and prejudice. Accordingly, these issues are procedurally barred.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of Ground One, and the claims raised in Issues C, D, E, F, G, H, and I in Ground Two which relate to the ineffectiveness of appellate counsel. The remaining claims in Ground Two which raise claims of ineffective assistance of trial counsel and the three claims of ineffective assistance of appellate counsel which were ruled on by the PCR judge are discussed below.

**Merits of Remaining Claims in Ground Two**

**Issue A**

In Issue A, the petitioner alleges appellate counsel was ineffective for failing to raise on appeal the issue of whether his statements should have been suppressed. As noted above, the petitioner gave three statements - an oral and a written given prior to his arrest and a written statement given after his arrest. With respect to his claim that appellate counsel was ineffective for failing to challenge the petitioner's oral statement and the first written statement, the petitioner's allegations were not preserved for the state supreme court's review as the PCR judge did not rule on these issues. The PCR judge ruled only upon whether appellate counsel was ineffective for failing to raise on appeal the issue concerning the admissibility of the petitioner's statement to police *after* his arrest. (App.

21

730-31.)  The PCR judge held that appellate counsel was not ineffective for failing to raise an issue on appeal relating to the petitioner's post-arrest statements because there was no merit to the issue.  (App. 731.)

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington,* 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient."  *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, i.e. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.* at 697.  Review of counsel's performance is "highly deferential."  *Id.* at 689.

Trial counsel testified she did not raise the trial court's denial of the motion to suppress these later statements because she did not believe it was a meritorious issue. She testified that she had reviewed the record and it reflected that the petitioner had been given and waived his *Miranda* rights and there was no evidence of coercion.  (App. 43- 44.)  The record supports appellate counsel's decision not to raise this issue on appeal. Police officers testified that the petitioner was placed into custody and although he was not immediately advised of his *Miranda* rights at the time of his arrest, he was not questioned until after he arrived at the Sheriff's Office and had been given his *Miranda* rights.  (App. 39.)  The PCR judge's decision finding that there was no merit to the issue of whether or not these post-arrest statements were voluntary.  The PCR judge's decision was not contrary, nor an

22

unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

### Issue B

In Issue B, the petitioner alleges his appellate counsel was ineffective for failing "to raise on appeal that the prosecution violated Rule 5 and *Brady* by withholding the identity of a witness as to motive until the first day of trial."  The PCR judge ruled upon the issue of whether appellate counsel was ineffective for failing to raise on appeal the trial judge's denial of a motion for a continuance based on an alleged violation of Rule 5 and *Brady*. (App. 728-30.)

Prior to the start of the trial, the solicitor informed trial counsel that he had obtained information that day indicating that Edward Allison, the petitioner's uncle, had cashed checks on behalf of the deceased victim prior to her death providing a possible motive for the petitioner's murdering his grandmother. Trial counsel objected to the introduction of this testimony before trial and moved to suppress the testimony and for a continuance. The trial judge denied the continuance motion but indicated that court would assist in obtaining any information that trial counsel might need to respond to this new testimony.  The trial judge then recessed and gave trial counsel an opportunity to interview the witness and obtain information from the bank, such as a cancelled check.  (App.116-123.)

Even viewing this issue as if the petitioner's is complaining about the failure to raise denial of the motion for a continuance, this issue is without merit. The PCR judge held that the denial of the continuance was not meritorious.  (App. 730.)

At the PCR hearing, appellate counsel testified that she had reviewed the record and did not believe that the issue regarding the denial of the continuance request for alleged discovery violations was meritorious. She further stated any error had likely been cured by

23

the trial judge's accommodations. Moreover, appellate counsel testified that, in her professional experience, denials of motions for continuances are usually not successful on appeal. (App 43- 44; 46-47.)

It is well established that a request for a continuance is a matter within the discretion of the trial court. *Avery v. Alabama,* 308 U.S. 444, 446 (1940). Furthermore, "reversals of refusal of continuance are about as rare as the proverbial hen's teeth." *State v. Lytchfield,* 95 S.E.2d 857 (S.C. 1957). Given that the state appellate courts would have reviewed the issue through the abuse of discretion lens, appellate counsel did not perform deficiently in failing to present the issue on appeal, and there is not a reasonable probability that had counsel presented the issue the outcome of the appeal would have been different. Further, there is no evidence regarding what further investigation might have lead to, such as other evidence or that additional defenses might have been obtained. *State v. Vaughn*, 232 S.E.2d 328 (S.C. 1977). Thus, as the PCR judge found there has been no showing of any prejudice. (App. 730.)

Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit

**Issue C**

In Issue C, the petitioner alleges his trial counsel were ineffective for failing to make a directed verdict motion as to the murder charge. The respondent contends that the petitioner is not entitled to relief on this claim.

The PCR judge held that this issue was without merit. (App. 729.) He noted that the petitioner seemed to be arguing that there was no direct evidence that he willfully killed his grandmother with malice. (*Id.*) The PCR judge held that while there was no direct

24

evidence, there was ample circumstantial evidence to support the murder conviction. (App. 730.) Therefore, he concluded that a directed verdict motion would have been denied and thus trial counsel was not ineffective for failing to move for a directed verdict on the murder charge. (*Id.*)

At the PCR hearing, trial counsel testified that he moved for a directed verdict on one of the charges but did not make such a motion on the murder charge because he did not think it was meritorious. Trial counsel testified that he believed that plenty of evidence was presented that warranted sending the murder charge to the jury. (App. 56 - 57.)

A directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense. *State v. McCluney*, 606 S.E.2d 485, 486 (S.C. 2004); *State v. McLauren*, 563 S.E.2d 346, 351 (S.C. 2002). The trial court may not weigh the sufficiency of the evidence. *McLauren,* 563 S.E.2d at 351. In other words, if the prosecution has presented any evidence of the elements of the charged offense, the case will survive a motion for directed verdict.

This claim essentially goes to the sufficiency of the evidence. "'Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.' " *Wilson v. Greene,* 155 F.3d 396, 405 (4th Cir.1998) (*citing Wright v. West*, 505 U.S. 277, 296  (1992)). The relevant question in a federal habeas proceeding reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The reviewing court does not evaluate the credibility of witnesses or retry the evidence. *See Wright v. West,* 505 U.S. 277, 296 (1992). Therefore, the petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a

25

reasonable doubt." *Jackson,* 443 U.S. at 324; *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).

The petitioner contends that there is no evidence of malice.  (Pet'r's Mem Opp. Summ. J. Mot. at 23.)  However, under South Carolina law, malice may be inferred if the killing was the result of an act done in the commission of a felony.  *Gore v. Leeke,* 199 S.E.2d 755, 758-759 (S.C. 1973).  The petitioner was convicted of first degree arson and second degree arson, both of which are felonies.  S.C. Code § 16-1-90(A)(arson in the first degree is a "Class A" felony); and S.C. Code § 16-1-90(B) (arson in the second degree is a "Class B" felony).

Clearly, there was evidence presented at trial that the petitioner had committed murder (and arson) such that a motion for a directed verdict as to the murder charge would have been denied.   In his written confessions, the petitioner admits setting his grandmother's house on fire.   The petitioner states that he had made a phone call from his grandmother's house immediately before the fire.  The petitioner's tin matchbox was found at the scene of the second fire  and the petitioner had a large amount of money on him the following day.  (App. 263-265; 246 -247; 248 -249; 358-361;412- 413; 431.)

The PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law.   Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Issue D**

In Issue D, the petitioner alleges that appellate counsel was ineffective because she failed to request a rehearing following the denial of certiorari.[4]   The respondent contends that this issue is without merit.

The PCR judge held that a petition for a rehearing would have been fruitless. (App. 732.)  He held that the petitioner had failed to prove appellate counsel was deficient or that her performance prejudiced him.  (*Id.*)

At the PCR hearing, appellate counsel testified that she reviewed the case and saw no reason to file a petition for rehearing.  (App. 44 - 45.)   Appellate counsel exercised reasonable professional judgment in determining that a petition for rehearing was not warranted.   In any event, there is no constitutional right to counsel in seeking a rehearing, *See Wainwright v. Torna*, 455 U.S. 586 (1982) (holding that defendant in state criminal case did not have a constitutional right to counsel in pursuing discretionary review in the state supreme court); *Ross v. Moffitt,* 417 U.S. 600 (1974) (holding that there is no constitutional right to counsel in pursuing a writ of certiorari in the Supreme Court).  Thus, the petitioner's constitutional rights could not have been violated by appellate counsel's failure to file for rehearing.  *Mills v. United States,* 2007 WL 4458304 (E.D. N.C. 2007)(unpublished).

The PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law.   Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Issue E**

---

[4]To the extent that the petitioner seeks to raise an allegation that trial counsel was ineffective for failing to request a curative instruction as well, that issue is procedurally defaulted because it was neither raised to nor ruled upon by the PCR court.  Further, the petitioner cannot show cause and prejudice from the default, or that failure to review the constitutional claim will result in a fundamental miscarriage of justice under *Coleman*, 501 U.S. at 749-50.

In Issue E, the petitioner alleges that his trial counsel were ineffective for failing to address the outburst of a witness, Randy Glenn Allen.   The petitioner alleges trial counsel should have moved for a mistrial or a curative instruction. The respondent contends this issue is without merit.

Initially, the undersigned notes that the petitioner's allegation that trial counsel was ineffective for failing to request a curative instruction is procedurally barred.  The PCR judge ruled only on whether trial counsel was ineffective for failing to move for a mistrial - not whether trial counsel should have moved for a curative instruction.  Thus, in regards to this claim, the undersigned will address the merits of only whether trial counsel was ineffective for failing to move for a mistrial.

The PCR judge held that the petitioner had not shown that trial counsel was deficient or that he was prejudiced.  (App. 727.)  He held that the witness' outburst did not rise to the level to where a mistrial was necessary.  (*Id.*)  Further, the PCR judge that found that the outburst did not affect the outcome of the trial and thus the petitioner had not shown any prejudice.  (*Id.*)

During the trial, after stepping off the witness stand, Allen stated, "I mean I don't care who it makes mad . . . I'm telling the truth."  (App. 426.)  At the PCR hearing, trial counsel noted that the trial judge interrupted the witness.  Trial counsel testified that he saw no reason to move for a mistrial.  Trial counsel also testified that he did not believe the remarks affected the outcome of the trial.  (App. 57 -58.)   While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not ordinarily constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689; *Bunch v. Thompson,* 949 F.2d 1354 (4th Cir.1991) Here, the petitioner cannot show deficient performance because counsel made

28

a reasonable strategic decision not to move for a mistrial because the trial judge had already interrupted the witness and the comments were not prejudicial.

Moreover, the petitioner also failed to prove any prejudice. As noted above, the PCR judge specifically found that the outcome of the trial would have been the same regardless of whether the outburst occurred or not. (App. 727.) Under South Carolina law "(d)ecisions regarding . . . whether to grant or deny a mistrial are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Sweet,* 647 S.E.2d 202, 204-205 (S.C. S. Ct. 2007)(citations omitted).

The record supports the PCR judge's determination that trial counsel was not deficient for not moving for a mistrial after reviewing and weighing the choices and facts. Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Issue F**

In Issue F, the petitioner alleges that trial counsel was ineffective for failing to object to the reasonable doubt instruction at trial. During the petitioner's trial, the trial judge did not specifically define "reasonable doubt." As to reasonable doubt, the trial judge instructed that:

> Now this Court will not attempt to define for you what is meant by a reasonable doubt. This matter is completely up to you. A reasonable doubt is simply a doubt that you, in your collective wisdom, find to be reasonable under all of the circumstances and facts presented to you. A reasonable doubt can arise from evidence presented during the course of the trial or from the lack of evidence presented during the course of the trial. If the State has removed all reasonable doubt as to the defendant's guilt on any or all of the charges, then it is your duty to find him

29

> guilty. On the contrary, if you are left with a reasonable doubt as
> to the defendant's guilt on any or all of the charges, it is your
> duty to find the defendant not guilty.

(App. 552 -553.)  At the PCR hearing, trial counsel testified that he saw no reason to object

because he believed the charge given was appropriate.  (App. 58 - 59.)

To be entitled to federal habeas relief on an improper jury instruction claim, the

petitioner must establish that the erroneous jury instruction was so prejudicial that it

negatively affected the outcome of the trial. *Tarpley v. Estelle,* 703 F.2d 157, 159 (5th Cir.

1983). Even if a jury instruction is improper, it only violates a defendant's constitutional

rights if the instruction "by itself so infected the entire trial that the resulting conviction

violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (*quoting Cupp v.

Naughten*, 414 U.S. 141, 147(1973)).  Further, the proper inquiry is not whether the

instruction "could have" been applied in an unconstitutional manner, but whether there is a

reasonable likelihood that the jury did so apply it.  *Id.* at 72, n. 4

Furthermore, in the Fourth Circuit, "[a]n erroneous jury charge may form the basis

of a habeas petition, either independently or in conjunction with an ineffective assistance

of counsel claim. *Luchenburg v. Smith,* 79 F.3d 388, 391 (4th Cir. 1996)(*citing Cupp*, 414

U.S. at 147).  When a petitioner contests the jury charge in conjunction with an ineffective

assistance of counsel claim, the petitioner still must satisfy the two-prong test of *Strickland*

and show "(1) that counsel made errors so serious that counsel's representation fell below

an objective standard of reasonableness, and (2) that such failure resulted in prejudice so

as to render the results of the trial unreliable." *Id.*  Finally, jury instructions must be

reviewed not as isolated sentences, but as a whole. *Waine v. Sacchet,* 356 F.3d 510, 517

(4th Cir.2004).

Again, while the decisions of trial counsel are always subject to being second

guessed with the benefit of hindsight, tactical and strategic choices made by counsel after

30

due consideration do not ordinarily constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689; *Bunch v. Thompson,* 949 F.2d 1354. Further, the petitioner has not demonstrated that he was prejudiced as a result of trial counsel's alleged deficiency and, therefore, he cannot satisfy the second prong of *Strickland.*

The question in a federal habeas petition is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,"not merely whether "the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977) (internal quotations and citations omitted). Further, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Id.*

Reviewing the charge in its entirety, the petitioner has not shown trial counsel was deficient for failing to object. The trial court stated he was not going to define "reasonable doubt" and he did not. He merely stated that "[a] reasonable doubt is simply a doubt that you, in your collective wisdom, find to be reasonable under all of the circumstances and facts presented to you." He did not use the phrase "moral certainty" as was found objectionable in *Cage v. Louisiana*, 498 U.S. 39, 41 (1990). Furthermore, based upon the evidence in the record, the petitioner has not shown that the jury applied a lesser burden of proof or that the alleged erroneous instruction by itself so infected the entire trial that his conviction violates due process, nor has he shown that the state court's rejection of this claim was unreasonable. Finally, the petitioner has not presented any evidence to demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had objected to the jury charge. *Strickland,* 466 U.S. at 694.

Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an

31

unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

### Issue G

In Issue G, the petitioner alleges that his trial counsel was ineffective for failing to object to the prosecutor's improper remarks in his closing argument.

In his closing, the solicitor, stated:

> Now no one wants to believe that a grandson would kill his grandmother. But who wants to believe that a son or that a husband would beat his wife or that a parent would kill a child or that a child would kill a parent. You hear about those things everyday.

(Supp. App. 538.)  He also complained that the prosecutor referenced evidence presented in the case. The PCR court concluded that the petitioner failed to prove either deficiency or prejudice from trial counsel's failure to object to the solicitor's closing argument.

"'[I]t is not enough that the remarks were undesirable or even universally condemned.'  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).  On habeas review, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly, v. DeChristoforo,* 416 U.S. 637, 643 (1974).  This question must be answered considering the totality of the circumstances of each case. *See Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006).  The standard in *Donnelly* is a very high standard for a defendant to meet.  Additionally, the "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips,* 455 U.S. 209, 219(1982).  "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly,* 416 U.S. at 647.

The petitioner states that the solicitor's "blatant remarks [are] clearly impermissible." (Pet'r's Mem. Opp. Summ. J. at 28.)  However, he does not state why the remarks are prejudicial.  As the PCR judge found, the undersigned does not think that these comments were prejudicial. The challenged statements were a fair comment upon the facts of the case.   Therefore, the solicitor's comments did not so infect the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly*.

Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law.   Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Issue H**

The petitioner alleges that trial and appellate counsel were ineffective for failing to request at trial, and to raise on appeal, an additional jury charge on criminal intent. In his memorandum opposing summary judgment, the petitioner contends that "the trial court's instructions on criminal intent was [sic] more than confusing and contradictory."  (Pet'r's Mem. Opp. Summ. J. at 29.)

The PCR judge found that the charge given was adequate and not objectionable. (App. 729.)   At the PCR hearing, trial counsel testified that he saw no reason to object to the charge on criminal intent.  Trial counsel testified that he believed  that the charge was more than adequate.  (App. 699.)

The petitioner relies upon *Hyman v. Aiken,* 824 F.2d 1405 (4th Cir. 1987).  In *Hyman*, the court held that a burden-shifting  instruction was not harmless error because there was "substantial and uncontroverted evidence" of the defendant's intoxication at the time of the crime. *Id.* at 1410.  Thus, the court concluded, evidence of the defendant's intent was not so dispositive that it could be said beyond a reasonable doubt that the jury found it

33

unnecessary to rely on the burden-shifting instruction. *Id. Hyman* is inapplicable as there was no burden-shifting instruction given in this case.

Under South Carolina law, the general rule is that voluntary intoxication or use of drugs does not constitute a defense to a crime. It has been recognized, however, that insanity caused by the use of drugs or intoxication may be a defense where the insanity is permanent and destroys the defendant's ability to know right from wrong. *State v. Hartfield,* 388 S.E.2d 802 (S.C. 1990). "Voluntary intoxication, where it has not produced permanent insanity, is never an excuse for or a defense to crime. . . ." *Id.* (Internal citations omitted) While the instructions relative to insanity were irrelevant, they could not have been prejudicial since the plea of voluntary drunkenness was no defense and there was no claim of insanity. Therefore, trial counsel was not deficient in failing to object to the charge given or request a different instruction.

Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Issue J**

In Issue J, the petitioner alleges trial counsel was ineffective for failing to object to the unconstitutional murder sentence which the petitioner alleges was contrary to legislative intent. The petitioner alleges that under S.C. Code Ann. § 16-3-20(A), there are three possible sentences: death, life, and a mandatory minimum sentence of thirty years. (Pet'r's Mem. Opp. SUmm. J. Mot. at 31.) As noted above, the petitioner was sentenced to forty years for the murder charge. The PCR judge found that the sentence complies with the law and was not objectionable. (App. 728.)

34

The petitioner cites *State v. Douglas,* 597 S.E.2d 1, 11 (S.C. App. 2004). In *Douglas,* the South Carolina Court of Appeals addressed whether a defendant had preserved for appellate review her claim that the trial judge made an *incorrect* statement of law when discussing sentencing options. The South Carolina Court of Appeals stated:

> During sentencing the trial judge stated, 'the sentence of the Court with regard to murder, and I will tell the open courtroom there is [sic] only two choices. It's either thirty years or life, period.' While [the defendant] argues this phrasing omits the option of levying a sentence of less than thirty years imprisonment, there was no contemporaneous objection at trial.

Contrary to the petitioner's assertions, the court did not hold that there are only two choices for sentencing for murder under § 16-3-20(A).

Moreover, the statute states "A person who is convicted of or pleads guilty to murder must be punished by death, by imprisonment for life, or by a mandatory minimum term of imprisonment for thirty years." The mandatory *minimum* is thirty years. Clearly, nothing in the statute prohibits a greater sentence.

Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Issue K**

In Issue K, the petitioner alleges that his PCR counsel was ineffective because she failed challenge on certiorari the constitutionality of the petitioner's murder sentence. However, the petitioner has no constitutional right to counsel in state habeas proceedings. *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997) (noting that there is "no right to effective assistance of counsel in . . . state habeas proceedings"). Therefore, the this claim should be dismissed.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 17) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.


                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

July 2, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).